475 So.2d 1040 (1985)
Roy GIROIR, Individually and as Administrator of the Estate of Earline Giroir
v.
SOUTH LOUISIANA MEDICAL CENTER, DIVISION OF HOSPITALS, Louisiana Health and Human Resources Administration, State of Louisiana, David Makey, M.D., E. Helm, M.D., and I. Bankston, M.D.
Nos. 84-C-1394, 85-C-1441.
Supreme Court of Louisiana.
September 10, 1985.
*1041 Dale P. Martin, Morgan City, for applicant-defendant in No. 84-C-1394 and for respondent-defendant in No. 85-C-1441.
Michael J. Samanie, David B. Allen, Herbert W. Barnes, Samanie & Barnes, Houma, for respondent-plaintiff in No. 84-C-1394 and for applicant-plaintiff in No. 85-C-1441.
DENNIS, Justice.
The main question presented is whether an amended petition, adding children as new plaintiffs in wrongful death and survival actions based on the death of their mother after prescription had run, relates back to the date of the filing of their father's timely original petition. The trial court permitted the amended petition to relate back and after a trial awarded the father and children damages. The court of appeal, 453 So.2d 949, struck the children's award, holding that their claims did not relate back and were time barred. We reverse as to the children's claims and reinstate their awards. An amendment adding a plaintiff relates back when the amended claim arises out of the same conduct, transaction, or occurrence set forth in the original petition, the defendant either knew or should have known of the existence and involvement of the new plaintiff, the new and the old plaintiffs are sufficiently related so that the added or substituted party is not wholly new or unrelated, and the defendant will not be prejudiced in preparing and conducting his defense. The children's claims fulfilled these criteria and therefore related back to the date of the original petition.
Earline Giroir sought medical treatment at South Louisiana Medical Center in Houma, Louisiana in March, 1979; she complained of abdominal pain, nausea and vomiting. She visited SLMC approximately fourteen times, both as an inpatient and as an outpatient from March to October, 1979. Mrs. Giroir continued to suffer, and in August of 1979 she began suffering from severe diarrhea as well. She continued to seek treatment at SLMC for these symptoms and in February, 1980 she underwent gallbladder surgery. The pathology report indicated that her gallbladder was not the source of her symptoms, and she was discharged from SLMC on March 2, 1980. Mrs. Giroir was readmitted to SLMC two days later due to continuous pain, nausea, and diarrhea, and her condition steadily deteriorated. On March 13 she went into shock and emergency surgery was performed; her condition was finally diagnosed as arterial thrombosis of the superior mesenteric artery which caused the "death" of her small intestine and a portion of her large intestine. By-pass surgery was performed, but the surgery came too late to prevent Mrs. Giroir's death. Mrs. Giroir had two more operations before she died on March 20, 1980.
Mrs. Giroir's husband, Roy Giroir, filed suit on March 13, 1981 against several physicians and SLMC seeking damages for *1042 Mrs. Giroir's pain and suffering as administrator of her estate and damages sustained directly by him due to the wrongful death of his wife. On March 23, 1981, one year and three days after Mrs. Giroir's death, an amending petition was filed, adding Mrs. Giroir's two major children, Ricky Giroir and Larke Giroir Pitre, as plaintiffs in both the survival action and the wrongful death action. The amending petition also changed Roy Giroir's capacity with respect to the survival action so that he appeared as an individual rather than as administrator of his wife's estate.
SLMC received actual notice of the existence of Mrs. Giroir's children prior to her death. In a psychiatric consultation report dated October 15, 1979, Dr. Ronald M. Bennett, Medical Director of the Terrebonne Mental Health Center, informed Mrs. Ellen Estevens, SLMC Clinical Social Worker, that Mrs. Giroir expressed anxiety about whether her grandchildren were being fed well similar to the anxiety she experienced when her son was in Viet Nam. Rebecca Achee, SLMC registered nurse, testified that she took Mrs. Giroir to Ochsner's Hospital for a CAT scan on March 13, 1980, and Mrs. Giroir's daughter accompanied them. General references to visits or communications with Mrs. Giroir's "family" and "family members" appear in the SLMC nursing notes and records made during her illness.
The defendants filed peremptory exceptions of prescription, alleging that the claims of the Giroir children had prescribed because the amendment adding them as plaintiffs was not filed within one year of Earline Giroir's death. The trial court overruled the exceptions and held a trial on the merits. The defendants urged exceptions of prescription and peremption at the close of the trial. The trial court overruled the exceptions and rendered judgment in favor of the plaintiffs against SLMC as follows: $250,000 in favor of Roy Giroir as administrator of the estate of Earline Giroir for Mrs. Giroir's pain and suffering; $100,000 to Roy Giroir individually for the wrongful death of Mrs. Giroir; and $50,000 to each of the Giroir children for the wrongful death of their mother. The trial court made no award to the Giroir children on the survival action; it entered the judgment in favor of Roy Giroir as administrator despite his amendment changing his capacity from administrator to individual.
SLMC appealed, contending that the trial court erred in overruling its exceptions of prescription and peremption with respect to the claims of the Giroir children, that the award should be apportioned among all three plaintiffs and reduced by two-thirds because the children's claims were untimely, and that the award for Mrs. Giroir's pain and suffering was excessive. The court of appeal reversed the trial court's wrongful death awards in favor of the Giroir children, finding that the amendment which added the children as plaintiffs did not relate back to the date of original filing. The court of appeal amended the judgment in the survival action to award damages to Roy Giroir individually, held that the children's claims were untimely and made no alteration in the award to Mr. Giroir for his wife's pain and suffering. We granted petitions for certiorari, by plaintiffs and defendant, 458 So.2d 108, 458 So.2d 109 (La. 1984).
Article 1153 of the Code of Civil Procedure provides:
When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original petition.
Because La.C.C.P. art. 1153 is based on Federal Rule of Civil Procedure 15(c), its doctrinal commentaries and judicial interpretations are strongly persuasive as to the meaning and application of the Louisiana article. Ray v. Alexandria Mall, 434 So.2d 1083 (La.1983); Allen v. Smith, 390 So.2d 1300 (La. 1980); Tate, Amendment of Pleadings in Louisiana, 43 Tul.L.Rev. 211 (1969).
At the time of the enactment of La.C. C.P. art. 1153, Rule 15(c) provided as follows:

*1043 (c) RELATION BACK OF AMENDMENTS. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.
Rule 15(c) was amended in 1966, and the following sentence was added:
An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing an action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.
The 1966 amendment to Federal Rule of Civil Procedure 15(c) simply clarifies, by explicitly stating the permissive procedure and its appropriate safeguards which have existed under the rule since its promulgation. Travelers Indem. Co. v. United States ex rel. Construction Specialties Co., 382 F.2d 103 (10th Cir.1967); See 3 Moore's Federal Practice § 15.15[4-2]; Ray v. Alexandria Mall, supra, at 1085 n. 6 (La.1983). Although the Rule refers to "an amendment changing the party" it has properly been held to sanction relation back of amendments which add or drop parties, as well as those substituting new parties for those earlier joined. 3 Moore's Federal Practice § 15.15[4-2]. The doctrine of relation back under Rule 15(c) is liberally applied today in the federal courts, especially if no disadvantage will accrue to the opposing party. Williams v. U.S., 405 F.2d 234 (5th Cir.1968); Hockett v. American Airlines, Inc., 357 F.Supp. 1343 (N.D.Ill.1973); 1A Barron & Holtzoff, Federal Practice and Procedure, Section 448 (Wright ed. 1960).
Accordingly, this court in Ray v. Alexandria Mall, 434 So.2d 1083 (La.1983), in order to decide whether plaintiff's amended petition adding a defendant related back to overcome an exception of prescription, extensively reviewed federal judicial interpretations, viz., Bush v. Oceans Intern., 621 F.2d 207 (5th Cir.1980); Simmons v. Fenton, 480 F.2d 133 (7th Cir.1973); see also Anastasio v. Holiday Inns, Inc., 93 F.R.D. 560 (D.N.J.1982); American Banker's Ins. Co. of Florida v. Colorado Flying Academy, 93 F.R.D. 135 (D.Colo.1982); Malmrose v. Aljoe's Estate, 92 F.R.D. 490 (D.Pa. 1981); Williams v. U.S., 405 F.2d 234 (5th Cir.1968); Ingenito v. Bermec Corp., 441 F.Supp. 525 (D.N.Y.1977); Naxon Telesign Corp. v. GTE Information Systems, Inc., 89 F.R.D. 333 (D.Ill.1980); Maxey v. Thompson, 680 F.2d 524 (7th Cir.1982); Florence v. Krasucki, 533 F.Supp. 1047, (D.N.Y. 1982); Hart v. Bechtel Corp., 90 F.R.D. 104 (D.Ariz.1981); Horwitt v. Longines Wittnauer Watch Co., Inc., 388 F.Supp. 1257 (D.N.Y.1975); and Adams v. Beland Realty Corp., 187 F.Supp. 680 (D.N.Y.1960), and established the following criteria for determining whether article 1153 allows an amendment which adds or substitutes a defendant to relate back to the date of the filing of the original petition: (1) The amended claim must arise out of the same transaction or occurrence set forth in the original pleading; (2) The purported substitute defendant must have received notice of the institution of the action such that he will not be prejudiced in maintaining a defense on the merits; (3) The purported substitute defendant must know or should have known that but for a mistake concerning the identity of the proper party defendant, the action would have been brought against him; (4) The purported substitute defendant must not be a wholly new or unrelated defendant, since this would be tantamount to assertion of a new cause of action which would have otherwise prescribed.
The plaintiff in Ray v. Alexandria Mall, supra, who slipped and fell in a shopping center, mistakenly sued "Alexandria Mall" rather than "Alexandria Mall Company", a *1044 partnership which actually owned the premises. After prescription ran plaintiff amended her petition to add the partnership as defendant. There was no question but that the partnership had notice of the litigation because in her original petition plaintiff also sued the partnership's insurer and caused service to be made upon the mall manager. Under these circumstances, this court held, the plaintiff's amended petition related back: the claim asserted by the amendment arose out of the same transaction or occurrence set forth in the original pleading. The defendant was notified of plaintiff's claim and therefore would not be prejudiced in its defense. The amended petition added a defendant which was not wholly new and unrelated to the pending litigation.
Essentially the same criteria established by Ray v. Alexandria Mall should be applied to determine whether an amended petition adding a plaintiff relates back. While Rule 15(c) as phrased deals only with changing defendants, the Advisory Committee's Note of 1966 points out that its approach is also relevant to amendments substituting or adding plaintiffs: "... [T]he attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs." 39 F.R.D. 69, 84; 3 Moore's Federal Practice § 15.15 [4-2]. The federal courts have held that it is clear that the considerations established in the rule were intended to apply to an amendment which substitutes or adds a plaintiff. Eg., Paskuly v. Marshall Field & Co., 494 F.Supp. 687 (N.D.Ill.1980) aff'd per curiam, 646 F.2d 1210 (7th Cir.) cert. denied, 454 U.S. 863, 102 S.Ct. 321, 70 L.Ed.2d 162 (1981). Staren v. American National Bank & Trust Company of Chicago, 529 F.2d 1257 (7th Cir.1976); Unilever (Raw Materials) Ltd. v. M/T Stolt Boel, 77 F.R.D. 384 (S.D.N.Y. 1977); Metropolitan Paving Co. v. International Union of Operating Engineers, 439 F.2d 300 (10th Cir.1971), cert. denied, 404 U.S. 829, 92 S.Ct. 68, 30 L.Ed.2d 58 (1971). Accordingly, an amendment adding or substituting a plaintiff should be allowed to relate back if (1) the amended claim arises out of the same conduct, transaction, or occurrence set forth in the original pleading; (2) the defendant either knew or should have known of the existence and involvement of the new plaintiff; (3) the new and the old plaintiffs are sufficiently related so that the added or substituted party is not wholly new or unrelated; (4) the defendant will not be prejudiced in preparing and conducting his defense. See Ray v. Alexandria Mall, supra p. 1087; Leachman v. Beech Aircraft Corp., 694 F.2d 1301 (D.C.Cir.1982); Hockett v. American Airlines, 357 F.Supp. 1343 (N.D.Ill. 1973); Williams v. United States, 405 F.2d 234 (5th Cir.1968); Paskuly v. Marshall Field Co., supra; Bujtas v. Henningsen Foods, Inc., 63 F.R.D. 660 (S.D.N.Y.1974); 3 Moore's Federal Practice § 15.15 [4-1] at 15-220 (1982).
The problem of relation back of amendments involving a change in the capacity of the parties is less difficult. Where a plaintiff only seeks to change the capacity in which the action is brought, or in which defendant is sued, because there is no change in the parties, and because all parties are on notice of the facts out of which the claim arose, an amendment will relate back to the date of the original pleading absent prejudice due to the delay in filing. Eg., Longbottom v. Swaby, 397 F.2d 45 (5 Cir.1968); Taormina Corp. v. Escobedo, 254 F.2d 171 (5 Cir.1958); Kerney v. Fort Griffin Fandangle Ass'n. Inc., 624 F.2d 717 (5 Cir.1980); Meadoux v. Hall, 369 So.2d 240 (La.App. 4th Cir.1979), writ denied, 369 So.2d 1366.
Applying these precepts, we conclude that the actions asserted in the Giroirs' amended petition all relate back to the date of filing of the original petition. With respect to Mr. Giroir, the amendment only sought to change the capacity in which he brought the survival action. Because Mr. Giroir was already before the court in a different capacity and filed the amendment only ten days after the original petition, and because the defendants already were on notice of the facts out of which his claim *1045 arose, there was no prejudice to the defendant and the amendment clearly related back. Regarding the children's wrongful death and survival actions, each action added by amendment clearly stems from the same conduct, transaction, or occurrence set forth in the original pleading, viz., the medical malpractice and the resulting death of the children's mother. The defendants knew or should have known of the existence and involvement of the Giroir children: First, because the facts in the original petition gave defendants notice of, and did not negative, the reasonable possibility that a surviving child of the deceased 55 year old married woman would be entitled to recover as a survivor or wrongful death beneficiary under Civil Code article 2315 and might later assert a claim; Second, because SLMC received actual notice that Mrs. Giroir had children and grandchildren from the recorded visits of her "family" and "family members", the recorded assistance of her daughter in transporting her to Ochsner's for a CAT scan, and the recorded psychiatric report that her concerns for her grandchildren were similar to those she had had for her son in Viet Nam. The original plaintiff and the new plaintiffs have close, familial and legal relationships: As parent and children, and as members of a nuclear family including the deceased, they are authorized by law to the exclusion of all other persons to recover in survival and wrongful death actions because of Mrs. Giroir's death. See C.C. art. 2315. Clearly, the children are not wholly new or unrelated to their father with respect to actions based on the death of their mother, and the addition of them as plaintiffs does not change the basic underlying claim. Finally, the defendants were not prejudiced by the amendment in preparing and conducting their defense, not only because the added actions arose from the same conduct alleged in the original pleading and because they knew of and had record of the existence of the closely related children, but also because the amendment was filed just ten days following the original petition, giving defendants ample time to prepare for trial. The defendants failed to show that they were in any way injured or impaired in their ability to investigate, preserve evidence, and prepare defenses, on both liability and quantum issues, by the children's delay of ten days in asserting actions identical to those brought by their father's timely petition.
Under the circumstances of this case, no essential protective purpose of the prescriptive statute is violated by permitting relation back of the post prescription amendment based on the same factual situation pleaded in the original timely petition. Through the original pleading the defendants knew that judicial relief was sought arising from the general factual situation alleged, and they were put on notice that their evidence concerning it should be collected and preserved. The fundamental purpose of prescription statutes is only to afford a defendant economic and psychological security if no claim is made timely, and to protect him from stale claims and from the loss of non-preservation of relevant proof. They are designed to protect him against lack of notification of a formal claim within the prescriptive period, not against pleading mistakes that his opponent makes in filing the formal claim within the period. Allstate Ins. Co. v. Theriot, 376 So.2d 950, 954 (La.1979), rehearing denied 1979; Nini v. Sanford Brothers, Inc., 276 So.2d 262 (La.1973); Tate, Amendment of Pleadings in Louisiana, 43 Tul.L.Rev. 211, 233 (1969); F. James, Civil Procedure § 5.9 (1965); Comment, Developments in the Law: Statutes of Limitations, 63 Harv. L.Rev. 1177, 1185 (1950).
Defendant set forth three arguments: that the court of appeal erred by failing to reverse Roy Giroir's survival claim judgment because he brought it in an improper capacity as administrator of his wife's estate; Alternatively, that Giroir's survival claim should be reduced by 2/3 because the children's actions were perempted; and that the $250,000 survival action award was an excessive abuse of discretion.
Because we have concluded that the amended petition related back, and that each plaintiff is therefore entitled to recover *1046 fully in his individual capacity in both survival and wrongful death actions, consideration of a complete reversal or reduction of Giroir's award is precluded. As for the amount to be awarded on the survival claim, we agree with the court of appeal that $250,000 is not excessive for the reasons stated in its opinion.

DECREE
The judgment of the court of appeal is reversed in part and affirmed in part. The judgment of the trial court is reinstated but amended to provide for awards as follows:
For the wrongful death of Earline Giroir:

Larke Giroir Pitre ........$ 50,000
Ricky Giroir...............$ 50,000
Roy Giroir.................$100,000

For recovery under the survival action:

Larke Giroir Pitre ........$ 83,333.33
Ricky Giroir...............$ 83,333.33
Roy Giroir.................$ 83,333.34
 ___________
 $250,000.00

All costs are assessed to defendants.
REVERSED IN PART; AFFIRMED IN PART; AMENDED; AND RENDERED.
LEMMON, J., subscribes and will assign additional concurring reasons.
MARCUS, J., concurs in part and dissents in part and assigns reasons.
WATSON, J., dissents.
MARCUS, Justice (concurring in part and dissenting in part).
The first question is whether the filing of the survival action by Roy Giroir, as administrator of the estate of Earline Giroir, satisfied the one-year requirement of La. Civ.Code art. 2315[1] so as to entitle both Roy Giroir and the Giroir children to recover survival damages. That the plaintiff bringing the action lacks the capacity to sue, for whatever reason, does not matter, if the defendant has been notified of the titles which are the foundation of the demand for the whole of the property or debt, so as to acquire a sufficient knowledge of the rights which are sought to be enforced against him. Nini v. Sanford Brothers, Inc., 276 So.2d 262 (La.1973); Flower v. O'Connor, 17 La. 213 (1841). An amendment can be filed after the prescriptive period to name the correct plaintiffs or the correct capacity of the plaintiffs, and the amendment will relate back to the date of the original filing. La.Code Civ.P. art. 1153;[2]Nini v. Sanford Brothers, Inc., supra.
The survival action of Roy Giroir, as administrator of the estate of Earline Giroir, notified SLMC that suit was being filed on behalf of the heirs of Earline Giroir who might be entitled to recover for the damages that she had suffered and would have been entitled to recover if she had lived. Hence, the supplemental and amending petition asserting that the beneficiaries were suing in their individual capacity "related back" to the filing of the original petition. Accordingly, I concur with the majority in this respect.
However, I consider that the Giroir children's wrongful death actions have prescribed. *1047 Survival and wrongful death actions are two separate and distinct causes of action which arise from a common tort but at different times and are addressed to the recovery of damages for totally different injuries and losses. Guidry v. Theriot, 377 So.2d 319 (La.1979). The original petition notified SLMC that judgment was being sought against it for all the damages suffered by Earline Giroir (survival action) and for the damages which Roy Giroir, individually, had suffered as a result of her wrongful death. Nothing indicated that the Giroir children had also suffered compensable damages as a result of Earline Giroir's death. SLMC was therefore not put on notice that it should preserve and collect evidence of such damages. Furthermore, it was not notified of the increased liability that such damages would entail. Cf. National Surety Corp. v. Standard Accident Insurance Co., 247 La. 905, 175 So.2d 263 (1965). Rickey James Giroir and Lark Giroir Pitre cannot now be said to have timely instituted their wrongful death actions just because we find that their rights to recover for their mother's damages were timely exercised on their behalf by their father as administrator. Cf. Gunter v. Plauche, 439 So.2d 437 (La. 1983). The wrongful death actions of the Giroir children have prescribed because SLMC was not given notice thereof within the one-year period provided by La.Civ.Code art. 3492.[3] Accordingly, I disagree with the majority in this respect.
For the foregoing reasons, I concur in part and dissent in part.
NOTES
[1] La.Civ.Code art. 2315 provides in pertinent part:

D. (1) The right to recover all other damages caused by an offense or quasi-offense, if the injured person dies, shall survive for a period of one year from the death of the deceased in favor of:
(a) The surviving spouse and child or children of the deceased, or either such spouse or such child or children;
. . . . .
(2) The survivors in whose favor this right of action survives may also recover the damages which they sustained through the wrongful death of the deceased.
[2] La.Code Civ.P. art. 1153 provides:

When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading.
[3] La.Civ.Code art. 3492 provides:

Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained.